## WINTER v. GANI.

### No. 2191.

Court of Appeal of Louisiana. First Circuit.
Jan. 14, 1941.

Robt. R. Stone, of Lake Charles, for appellant.

Plauche & Plauche, of Lake Charles, for appellee.

OTT, Judge.

The suit is to recover the balance on an open account for goods and merchandise sold by the F. C. Winter Mercantile Company to the defendant between December 1, 1928, and December 2, 1932. It is admitted that the plaintiff has the right to prosecute the suit in the capacity in which she has brought it and that she has succeeded to all the rights of the mercantile company as the original creditor. The account filed in the record gives an itemized statement of all purchases and credits made by the defendant, showing a balance of $276.21, including interest on the account. The last admitted payment on the account was made on July 5, 1933. The suit was filed in August, 1937, and the account is prescribed unless a credit of $3.05 alleged to have been made on July 2, 1935, had the effect of interrupting prescription.

The defendant pleaded the prescription of three years and alleged that the credit of $3.05 shown on the statement of account as having been made on July 2, 1935, was not made by him, nor did he authorize any one to make any such payment for him. The sole question presented is whether or not the plea of prescription is well founded. Other than this credit of $3.05, the defendant does not dispute the correctness of the account.

The trial court overruled the plea of prescription and rendered judgment against the defendant for $206.39, with interest thereon in the sum of $66.77, with 5% interest on said principal from judicial demand. The case is here on a devolutive appeal taken from this judgment by the defendant.

It appears that a short time after the defendant incurred the indebtedness sued on, he discontinued the business which he was operating when the debt was incurred. In 1934, his wife started up a business of her own and in her name. As a part of that business, she sold fireworks. On July 2, 1935, Jack Winter, a 14-year-old boy, son of Mr. F. C. Winter who was the owner and operator of the mercantile company which had sold the goods to defendant, went to the store operated by Mrs. Gani and purchased fireworks amounting to $3.05 for which he was given a charge slip. Mr. Winter died in 1937, just before this suit was filed.

Young Winter testified that he purchased these fireworks from Mrs. Gani at the suggestion of his father who was living at that time and that the purchase was to be applied as a credit on the old account which the defendant owed the Winter Mercantile Company; that he gave the slip to Miss Waite, the bookkeeper of the mercantile company; that he asked Mrs. Gani if he could get the fireworks and charge them to the old account which her husband owed his father and she assented to this; that the defendant was not present at the time and knew nothing of this purchase and the agreement to charge it to the old account.

Miss Waite testified that she was the bookkeeper for the Winter Mercantile Company in 1935 when Jack Winter got permission from his father to buy these fireworks from Mrs. Gani; that he went and purchased the fireworks and gave her the slip; that she did not credit defendant's account with this item in the ledger for the reason that this account had been

charged to profit and loss; that she carried the slip in her books as part of the company records, but did not enter it as a credit on the account; that she had the slip when she prepared the statement of account, but does not know what finally became of it and the slip was not produced on the trial.

Mrs. Gani admits selling Jack Winter the fireworks and that she gave him a charge slip for same, but she denies that she agreed that this item was to be credited on her husband's old account, or that anything was mentioned about this old account. The defendant also denies that he knew anything about the purchase of these fireworks from his wife by young Winter, or that any credit therefor was to be made on his old account.

The city judge made the following finding on this point:

"Passing now to the question as to whether or not there was an acknowledgment of. the account by the alleged credit transaction dated July 2, 1935, which credit was in the sum of Three & $^{05}$/100 ($3.05) Dollars, the Court is of the opinion that Jack Winter, as he testified, purchased some firecrackers from Mrs. Robert Gani, who at that time was operating a business of her own, separate and apart from her husband. The Court is further of the opinion from the testimony that Mrs. Robert Gani gave young Jack Winter the firecrackers and charged the debt to the old account of her husband, Robert Gani. The Court is impressed on that point by the testimony of Jack Winter and Miss Waite and this fact although vaguely denied by Mrs. Robert Gani is substantiated by her own testimony. The evidence reveals that Mr. & Mrs. Robert Gani were at the time of this transaction and are now living together as husband and wife and there existed at that time a community of property between them."

The judge then proceeded to hold that, as Mrs. Gani was a public merchant, her husband was liable for her debts, and as she could thus bind her husband for the obligations incurred by her in her business, she could likewise bind him by acknowledging his debt so as to interrupt prescription thereon. He cites Article 131 of the Civil Code and Charles Lob's Sons, Ltd., v. Karnofsky et al., 177 La. 229, 148 So. 34, as authority for his holding.

■ Conceding that Mrs. Gani did agree for this purchase by Jack Winter to go on the old account of her husband (and we seriously doubt that the proof shows that she made such an agreement), it remains a fact that the proof fails to show that the defendant authorized his wife to make such an agreement or that he knew anything of it. There is no doubt of the authority of the wife to bind herself and her husband *in anything relating to her trade,* if she is a public merchant and living with her husband. The cited case and article of the Code lay down that principle of law.

■ However, the principle of law that a married woman in this state is not liable for a community debt is so well established that it requires no citation of authority. Mrs. Gani was not liable for the community debt which was due the plaintiff; the defendant husband was alone liable therefor and he alone could be sued for it. He was the debtor and not his wife, as this debt had no relation whatever to the separate trade carried on by the wife.

■ Article 3520 of the Civil Code provides that prescription ceases to run whenever the *debtor* or *possessor* makes acknowledgment of the right of the person whose title they prescribe. The acknowledgment of the debt must be made by the debtor himself or by his authorized agent, and the power to acknowledge the debt must be express and special. Civil Code, Art. 2997. In order for a payment on a debt to toll the statute of limitations, such payment must be made by the debtor himself or by another under his authority and with his full knowledge and consent. Guaranty Bank & Trust Co. v. Heiderich, 163 La. 957, 113 So. 161, on rehearing; Gaillardanne v. Locascio, La.App., 166 So. 505; Brock, Bank Com'r v. Sharkey et al., La.App., 191 So. 137.

■ Assuming that Mrs. Gani did undertake to acknowledge the old debt due by her husband, she had no authority to do so. The acknowledgment must be clear and specific, and in order to interrupt prescription, the acknowledgment must be made by the debtor or his agent of his own debt and not the debt of someone else. Reconstruction Finance Corporation v. Thomson Gin Company, Inc. et al., La.App., 168 So. 715. Mrs. Gani had the right to acknowledge her own debt arising from her separate business as a public merchant and thereby interrupt prescription on that debt, and her acknowledgment of such debt would bind her husband liable with her

under the law. But that is not the situation here.

The only case that we have been able to find in our reports relative to the authority of the wife to acknowledge a debt of her husband so as to interrupt prescription is that of Orcutt v. Berrett, Adm., 12 La.Ann. 178. In that case the wife acknowledged the debt of her husband in his presence, and this acknowledgment was assented to by him. The court held that under these circumstances, the acknowledgment interrupted prescription. But in this case the alleged acknowledgment of the debt of the defendant husband was made by his wife out of the presence of the husband and without his knowledge or assent. The clear meaning of the cited case is that unless the husband is present and assents to the acknowledgment of his debt by his wife, her acknowledgment would not interrupt prescription.

Learned counsel for plaintiff ingeniously argues that the so-called women's emancipation laws (particularly Act No. 283 of 1928) have invested married women with a kind of joint control over the community interests somewhat similar to that of the joint control of commercial partners over the affairs of the partnership, thereby conferring on the wife the power to bind the community by her acknowledgment of a community debt in the same manner as one commercial partner may bind the partnership by his acknowledgment of a partnership debt. We are unable to agree with this somewhat novel theory. If such a result is to be accomplished, additional legislation is necessary, as Section 5 of the above act specifically states that none of its provisions shall modify or affect the laws relating to the matrimonial community of acquets and gains.

In a supplemental petition, plaintiff sets out a verbal acknowledgment of the account by the defendant to plaintiff's attorney in July, 1937. As we have found that the alleged credit on the account in July, 1935, was ineffective as an interruption of prescription, it follows that in July, 1937, prescription had already accrued on the account, and verbal testimony was not admissible to take the account out of prescription which had then accrued. Duncan v. Duncan, 29 La.Ann. 829. Conceding that parol testimony was admissible for such purpose, we agree with the trial judge that the proof offered was insufficient to prove an interruption.

Plaintiff also relies on a part of the testimony of Miss Waite admitted over the objections of the defendant to the effect that Mr. Winter, during his lifetime in 1935 or 1936, stated to her that he had called on the defendant to collect the account and the defendant told him to come back and he would make a payment on the account. We think this testimony was clearly inadmissible as hearsay and as a self-serving declaration on the part of the deceased. The general rule is that where the declarant is dead, statements made by him against his interests are admitted, but his statements made in his own interest are nothing more than self-saving declarations and do not come under exceptions to the hearsay rule. 20 Am.Jur., Evidence, Sections 556 and 608. Even statements made by a deceased person against his interest and admissible for that reason are the weakest kind of proof. Succession of Crawford, 16 La.App. 326, 134 So. 269.

We are of the opinion that the plea of prescription should have been sustained.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby avoided and reversed, and it is now ordered that the plea of prescription be sustained and plaintiff's suit dismissed at her cost in both courts.