508 So.2d 633 (1987)
GAMM, GREENBERG & KAPLAN a Partnership Composed of Jack H. Kaplan and Irving M. Greenberg, Plaintiffs-Appellants,
v.
Henry L. BUTTS, et al., Defendants-Appellees.
No. 18757-CA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
*634 Gamm, Greenberg & Kaplan by Irving M. Greenberg, Shreveport, for plaintiffs-appellants.
Bain & Burt by Troy E. Bain, Shreveport, for defendants-appellees Henry L. Butts, Argonaut Southwest Ins. Co., Floyd, Pearson, Stewart, Richman, Greer, Weil & Zack & Larry S. Stewart and Troy E. Bain.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendant-appellee Sisters of Charity of the Incarnate Word d/b/a Schumpert Medical Center.
Before HALL, FRED W. JONES, Jr., and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff law firm, Gamm, Greenberg, & Kaplan, filed suit against the defendants, Henry and Willie Mae Butts; Argonaut Southwest Insurance company; Sisters of Charity of the Incarnate Word of Shreveport, Louisiana d/b/a Schumpert Medical Center; Floyd, Pearson, Stewart, Richman, Greer, Weil & Zack; Larry S. Stewart and Troy E. Bain, to recover compensation for legal services rendered to the Butts on a medical malpractice claim. All defendants except Schumpert Medical Center filed a motion for summary judgment claiming the three year period for liberative prescription had run on plaintiff's claim. This motion was sustained by the trial court. Schumpert Medical Center then filed a plea of prescription which was also granted by the trial court. The plaintiff appealed the decisions of the trial court which dismissed its claim. For the following reasons, we affirm the trial court judgments.
On January 16, 1978, Henry and Willie Mae Butts employed the firm of Gamm, Greenberg and Kaplan to represent them and their minor daughter, Debra Lynn, in a medical malpractice suit against Dr. Anna Cummings and Schumpert Medical Center for injuries allegedly suffered by Debra Lynn. The Butts signed a contingency fee contract specifying that the plaintiff law firm was to receive forty percent of all sums recovered.
*635 Pursuant to their contract, plaintiff undertook the representation of its clients. Depositions were scheduled and other steps were taken by the attorneys on the Butts' behalf. In late December, 1981, Schumpert offered to settle the case for $37,500, but the Butts refused this offer.
On February 7, 1982, the Butts wrote to plaintiff indicating that they wished to discontinue the plaintiff's services. The Butts employed the Florida law firm of Floyd, Pearson, Stewart, Richmond, Greer, Weil and Zack and requested that their file be sent to that firm. An attorney in Shreveport, Troy E. Bain, was employed to work with and assist the Florida law firm.
On April 26, 1982, the plaintiff complied with the Butts' request and relinquished the file to the Butts' new attorneys. However, the plaintiff law firm did not formally withdraw as counsel from the lawsuit at that time. On May 25, 1982, and again on July 6, 1982, Mr. Bain wrote to plaintiff requesting a signature on a motion to substitute counsel. On July 22, 1982, Mr. Greenberg, of the plaintiff law firm, signed the motion to substitute counsel and returned this document to Mr. Bain. It was then filed in the suit record.
On June 26, 1984 the plaintiff filed the contingency fee contract in the suit record and in the mortgage records of Caddo Parish, Louisiana.
Around February 13, 1985, the Butts partially settled their claim with Schumpert Medical Center for $2,000,000.
On July 22, 1985 the plaintiff filed the present suit, claiming entitlement to $28,710.64 for compensation for legal services rendered to the Butts before being discharged.
All defendants except Schumpert Medical Center filed a motion for summary judgment seeking dismissal of plaintiff's claim, asserting that plaintiff's claim was barred by the three year liberative prescriptive period set forth in LSA-C.C. Art. 3494. Defendants argued that more than three years had elapsed since the plaintiff relinquished the file on the case or rendered legal services and therefore the claim had prescribed.
The plaintiff argues that the firm remained in the case and continued to perform services on behalf of the Butts until the signing of the motion to substitute counsel on July 22, 1982 and therefore the claim had not prescribed when the present suit was filed on July 22, 1985.
The trial court found that plaintiff's services to the Butts ended when the file was relinquished on April 26, 1982. The court reasoned that the plaintiff was not required to sign or execute the motion to substitute counsel. The court found that the motion to substitute counsel was simply a courtesy measure which was common practice in the local bar association. The trial court sustained the motion for summary judgment.
Thereafter, Schumpert Medical Center filed an exception of three years prescription. This exception was also sustained.
The plaintiff appealed, asserting that the prescriptive period on this claim for compensation for legal services did not begin to run until the signing of the motion to substitute counsel on July 22, 1985. Therefore, plaintiff contends that this suit was timely instituted.

PRESCRIPTION
LSA-C.C. Art. 3494 provides in pertinent part:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees....
LSA-C.C. Art. 3495 provides in pertinent part:
This prescription commences to run from the day payment is exigible....
The issue before us is the date upon which the three year period of liberative prescription began to run on this suit to collect compensation for legal services. The defendants argue that prescription on this claim began to run on the date the plaintiff relinquished the Butts' file to the new attorneys. The plaintiff argues that *636 prescription did not begin to run until the date on which the motion to substitute counsel was signed. For the following reasons, we find that prescription on the plaintiff's claim to collect compensation for legal services began to run, at the latest, on the date that the plaintiff relinquished the Butts' file to their new counsel.
When an attorney and client have a contingency fee contract, depending on the terms of that agreement, prescription for recovery of compensation for services rendered usually begins to run on the date that the judgment or settlement is reached and at that point the attorney is entitled to recover the percentage specified in the contract as his fee. Garden Hill Land Corporation v. Cambre, 354 So.2d 1064 (La. App. 4th Cir.1978), writ denied 356 So.2d 439 (La.1978).
However, a client may discharge his attorney at any time as a matter of right. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979); Farrar v. Kelly, 440 So.2d 939 (La.App. 2d Cir.1983). In such a case, the attorney is entitled to recover only for services actually rendered to the client. Saucier v. Hayes Dairy Products, Inc., supra. In the instant case, the plaintiffs and the Butts entered into a contingency fee contract which incorporated these principles.
In this case, with regard to discharge of an attorney, the contract provided as follows:
6. The Client reserves the absolute right to discharge the Attorney at any time. If the Client discharges the Attorney, the Client agrees to compensate the Attorney for his services rendered to the date of discharge, as well as for all costs, expenses and disbursements incurred by the Attorney, by paying the Attorney the fair and reasonable value of his services to be determined as follows:
a. If the Attorney is discharged before any verdict, award, determination or judgment is rendered, then the compensation of the Attorney shall be computed on a time basis in accordance with the applicable rates of the local County Bar Association. The Attorney shall, upon the Client's request, furnish the Client with an itemized statement of such services.
Under the terms of this contract, the Butts owed compensation for services rendered to the date of discharge and it is from this date that prescription on plaintiff's claim for compensation for legal services began to run. The Butts wrote a letter to the plaintiff discharging that firm on February 7, 1982. On April 26, 1982, the plaintiff had completed the furnishing of information concerning the case to replacement counsel and had complied with the Butts request to forward the case file to the Butts' new attorneys in Florida. At that point, the plaintiff law firm was fully discharged and prescription on the claim for compensation for legal services began to run.
Even if the terms of the contingency fee contract did not provide a determinative date for the running of prescription, the jurisprudence indicates that prescription began to run on the date the plaintiff forwarded the Butts' file to new counsel.
In Succession of Buvens, 373 So.2d 750 (La.App. 3rd Cir.1979), the court outlined elements to consider in determining when prescription begins to run on a claim for legal fees. In that case, the court found it important to consider the purpose of the employment, when and if it was accomplished, when and if services were completed, and whether or not services were charged for on a contingency basis. The court went on to say that the most important consideration and, in fact, the determining factor was the date upon which the employment of the attorney by the client was terminated.
In Garden Hill Land Corporation v. Cambre, supra, an attorney and client entered into a contingency fee contract. The attorney was dismissed by the client before a judgment was obtained. In that case, the court held that prescription on the attorney's claim to collect compensation and fees for legal services commenced to run on the date the attorney was dismissed.
*637 In the instant case, the plaintiff relies heavily on Barranger, Barranger & Jones v. Farmer, 289 So.2d 295 (La.App. 1st Cir. 1973). There, the attorney had represented one of the parties in a divorce action in which the parties reconciled. The court held that the attorney's actions in answering the correspondence of opposing attorneys following the client's reconciliation, and the return of requested documents, were services rendered on behalf of his client and that prescription on the claim for legal fees did not begin to run until the date those services were completed. Plaintiff argues that by analogy, the review of correspondence from the Butts' new counsel regarding the motion to substitute counsel and the actual execution and return of the motion to the new attorneys constituted services rendered on behalf of the Butts. Therefore, plaintiff argues that prescription on its claim to collect fees for those services did not begin to run until the day the motion was executed, July 22, 1982. However, Barranger was a case involving the possibility of continued domestic litigation and the need for further legal services. Most importantly, the attorneys in Barranger were not discharged as the plaintiff law firm was in the instant case.
Based upon the jurisprudence outlined above, and particularly in light of the clear wording of the contract between these parties, we do not find that review of letters requesting a signature on a motion to substitute counsel, or the actual signing of such a motion, constituted services rendered on behalf of a client under the facts of this case. The new attorneys could have simply enrolled as counsel. The plaintiff's execution of the motion to substitute counsel was not a necessary step in concluding its representation of its former clients. We find that the last affirmative action taken by plaintiff on behalf of the Butts was the relinquishment of the case files to the new attorneys on April 26, 1982. Prior to that time, the law firm was taking steps to conclude its representation of the Butts, and to gather and transmit information to the new attorneys. By April 26, 1982, the plaintiff had completed its activities on behalf of its clients and had relinquished the case files.
After relinquishing the case files to new counsel, the only actions taken by plaintiff with respect to this case were to review a transmittal letter containing the motion to substitute counsel sent by Mr. Bain on May 25, 1982. There is no indication that this letter was answered and the motion to substitute counsel was not signed. No explanation was given for the failure to execute the motion. The next action taken by plaintiff was to review another letter from Mr. Bain in which Mr. Bain again asked that a motion to substitute counsel be signed. Finally, on July 22, 1982, Mr. Greenberg of the plaintiff firm signed the motion to substitute counsel.
The actions taken by the plaintiff law firm after being discharged by the Butts pertained to the plaintiff's own interests in collecting compensation for legal services. These actions consisted of recordation of the contingency fee contract and attempts to collect compensation for legal services. These actions were in no way related to furthering the interests of the Butts in achieving a favorable outcome in the case.
Even if it could be said that any of these actions taken by the plaintiff firm related to its representation of the Butts, nevertheless, those steps were clearly taken after the firm was discharged by the Butts and after plaintiff had taken the steps required for an orderly transition of attorneys. Those actions had been completed by April 26, 1982. On April 26, 1982, the plaintiff law firm was effectively discharged and prescription of plaintiff's claim for compensation for legal services began to run.
When the plaintiff filed suit on July 22, 1985 to collect fees for legal services totaling $28,710.64, the claim was barred by the liberative prescriptive period of three years set forth in LSA-C.C. Art. 3494. Therefore, the trial court was correct in sustaining the motion for summary judgment and in granting the plea of prescription filed by the defendants in this case based upon LSA-C.C. Art. 3494.

*638 CONCLUSION
For the above stated reasons, we affirm the judgment of the trial court dismissing plaintiff's suit on the ground that the claim was barred by the three year liberative prescriptive period set forth in LSA-C.C. Art. 3494. All costs in this court and in the court below are assessed to the plaintiff.
AFFIRMED.